In Trespass on a Special Verdict the Case is
Joseph Belfield & Mary his Wife seised in Fee in Right of Mary by Deed Oct. 16. 1715. give & grant to Tho’s Mountjoy *B208 oldest Son & Heir of Mary 1600 a of Land more or less the remaining Part of a Tract of 2500 A. To hold the Plantation & 1000 A. adjoining in Fee tail & the remaining 600 Acres be the same more or less in Fee
The said Mary Belfield & Tho’s Mountjoy by Lease & Rel. 2 & 3. Apr. 1717. in Cons, of 83;£. sell & convey to W’m Wood-bridge 600 A. of Land Part of the sd. 1600 by certain Metes & Bounds described in the Deeds with gen’l Warranty ag’t them & their Heirs
Mary at the Time of making these Deeds was a feme covert but lived separate from her Husband And upon her Marriage there were Articles that she should have Power to alien & dispose of her Lands without her Husband which he permitted her to do Upon a Survey it appears there are but 1000 Acres to satisfie the whole 1600 including that conveied to Woodbridge
Mary Belfield died before Tho’s Mountjoy who is also dead without Issue The Pit. is Heir at Law to both W’m Wood-b,ridge enter’d into the 600 Acres & died seised & after his Death John Woodbridge his Son & Heir enter’d and the Deft, by his Command dug the Soil which is the Trespass supposed And if John Woodbridge has Title to the 600 A conveyed to his Father Then pro quer. If not pro Def. The County Court were of Opinion that Woodbridge had not a good Title & gave Judgment for the Pit. But I conceive that Judgment is erroneous
I must observe the Pits. Title in this Case is as Heir to Mary the Donor the Estate tail being determined by the Death of Tho’s Mountjoy the Donee without Issue And so he claims 1000 Acres in his Reversion The Defts. Title is under the Purchase from Mary Belfield to Tho’s Mountjoy
' In this Case there are 4 Points to be considered 1. Whether the Deed of a feme covert made alone & without her Husband but by his Consent & in Pursuance of Articles before Marriage will bind the feme & her Heirs And if so Then 2. Whether a Reversion in Fee expectant upon the Determination of an Estate tail may be conveied & will pass by Deeds of Lease & Release 3. Admitting no Estate passed out of Mary Belfield by the Lease & Release from her & Tho’s Mountjoy Whether those Deeds may not at least operate & be taken as an Explanation of the first Grant from Belfield & his Wife to shew which was [195] the Land intended to pass in Fee 4. Admitting the 600 Acres conveied to Woodbridge to be Part of the Land intailed *B209 Whether the Warranty of Thomas the Ten’t in Tail descending upon the Pit. who is Heir to the Donor will not bar him
1. The Deed of a feme covert simply taken without all Doubt is void Bro. Faits enrolled 14. Cro. El. 700. Hob. 225. But the Question is How far the Husbands License & Consent will make it valid for the Rule is Modus et conventio Vincunt legem Et pacto aliquid licitum est quod sine pacto non admiititur
Here it will be proper to consider the Reason why the Deed of a feme covert is void ft is because the Law supposes she has no Will of her own but is sub potestate viri Et cum in vita contradicere non potest Hob. 225. So that it is a Law introduced in Favour of Women to secure their Inheritance that they may not be compelled by their Husbands to alien them ag’t their Will
Let us now consider how far this Reason can influence the present Case. Here is an Agreem’t between Husband & Wife upon Marriage whereby a Power is given the Wife for her Benefit to alien the Land without the Husband which Power she executes And to obviate the Objection that she did this thro’ her Husbands Influence it appears they lived separate & she was even privately examined Thus the Reason why the Law adjudges the Deeds of Femes covert void does not subsist in the present Case Et cessante ratione legis cessat ipsa lex
In this Case the Husband could not controul the Wife in making this Deed A Court of Equity would have compelled him to perform the Articles if he had attempted it And there do not want Instances in the Law where the Act & Deed of a feme covert alone without her Husband is good & shall bind her & her Heirs If a Fine be levied by her without her Husband this shall bind if the Husband avoid it not during the Coverture 7. Rep. 8. Hob. 221. Husband & Wife levy a Fine of the Wifes Land to Uses with a Proviso that they at any Time during their Lives may make Leases the Wife during the Coverture made a Lease & adjudged good by Virtue of the Proviso Godb. 327. It is a known Rule that a feme covert cannot make a Will Vet if the Husband upon the Marriage covenants that she may make a Will Any Disposition in Pursuance of that Power will be good tho’ perhaps not strictly as a Will
The Inference to be drawn from these Cases is clearly this that tho’ the Act or Deed of a feme covert simply taken may be void Yet. the Consent of the Husband either tacit or express *B210 will make it good & binding upon her & her Heirs And there is both these concurring in the present Case the express Consent by the [196] Articles the tacit by not avoiding or endeavouring to avoid the Deeds during the Coverture Therefore I hope they are binding upon Mary Belfield & her Heirs And if so Then the next Thing to be enquired is
2. Whether a Reversion expectant &c. can be conveied & will pass by Deeds of Lease & Release And that such Reversion may be conveied I believe no Man will dispute 2. Rep. 51. a. Wiscots Case Yel. 149. Sal. 233. Badger & Loyd. 6. Rep. 155. Neither can there be any Question but it will pass by Lease & Rel. 2. Lill. Abr. 483.
Before the Statute 27. H. 8. of Uses a Reversion would not pass by Deed without Attornment but Attornment is not necessary upon any Conveiance within that Statute and a Reversion may well pass without it for the Statute transfers the Possession to the Use 1. Inst. 309. b. Now a Lease & Rel. being a Conveiance within the Statute 2. Mod. 250. All the Estate of the Grantors whether in Possession or Reversion was transferred & did well pass to the Grantees The Title the Pit. sets up is by Descent from Mary Belfield one of the Grantors which Descent is broke & prevented by these Deeds And is a Bar to any such Claim. But if these Deeds cannot operate so as to convey any Estate from Mary Belfield Yet
3. It may be taken as an Explanation of the first Grant from Belfield & his Wife to Mountjoy to shew which were the Lands intended to pass in Fee by the said first Grant The Premises in that 1. Grant have no certain Description or Boundaries but in general Terms 1600 Acres more or less the remaining Part of such a Pat. It was supposed there was then so much of that Pat. unsold and upon that Supposition 1000 A. are limitted in Tail & 600 in Fee but no certain Boundaries to either Upon this Grant it was reasonable to conclude the Grantee had 600 A. in Fee So Woodbridge thought & in Order to be as secure as possible & to take away all Objection that the Land he purchased was Part of the 1000 a. intailed he gets the 600 a. surveied
marked and bounded & procures Mary Belfield the 1. Grantee to join in the Conveiance with Mountjoy the Grantee which he thought would be a sufficient Declaration which was the Land intended to pass in Fee by the 1. Grant
If these Deeds cannot operate so as to pass an Estate out of *B211 Mary Belfield Unless they take Effect in this Manner as an Explanation of the first they can have no Operation at all as to Mary The Consequence of which will be that an honest Purchaser who acted with as much Caution as a Man well [197] could must lose his Land & be without any Remedy for his Money for Mountjoy is dead insolvent But I hope the Court rather than suffer such a Piece of Hardship & Injustice will support the Deed & make it effectual one Way or the other Judges will & ought to do every Thing to assist honest Purchasors And rather than a Deed shall have no Operation are even subtile in inventing Reasons to support them Ut res Magis valeat quam pereat And if the Court is of Opinion that the 600 A. conveied to Woodbridge were the Premises intended to pass in Fee by the 1. Grant Then we have a good Title under Tho’s Mountjoy But if it is taken to be Part of the Land intailed Then I say
4. That the Warranty of Thomas the Ten’t in Tail descending upon the Pit. who is Heir to Mary the Donor will bar the Pit. of his Reversion This is a Point well known & settled There are 3. kinds of Warranties, lineal, collateral & that commences by Disseisin Lit. s. 697. A Warranty is called lineal not in Respect to the Warranty but the Title of the Land & is defined by Lit. s. 703.to be where the Land would have descended from the Person making the Warranty if that Warranty had not intervened And so ex opposito a collateral Warranty is where the Land could not descend from the Person making the Warranty nor the Heir claiming the Land by any Possibility convey his Title from him As to Warranties that commence by Disseisin we have nothing to do in this Dispute
At the Common Law all Warranties except such as commenced by Disseisin bound the Heirs of those who made them & were a Bar to such Heirs to claim any Thing in the Tenements to which the Warranties were annexed Lit. s. 697. And so I apprehend they do still unless they are restrained by some Stat.
The 1. Stat. that restrains Warranties is Glouc. c. 3. which enacts that the Alienation of Ten’t by the Curtesie with Warranty shall be no Bar to the Issue Unless Assets in Fee simple descend to the Issue from the Father The next is Weston. 2. 1. which restrains the Warranty of Ten’t in tail from barring the Issue in tail And it must be this Statute if any that restrains the Warranty from barring in this Case But that I conceive it does not for it does not extend to restrain the Warranty from barring *B212 those in Reversion or Remainder and the Pit. claims in Reversion The Reason given for this Distinction is because the Warranty is lineal to the Issue, but to those in Rem’r or Reversion collateral And there is no Statute (in Force here) that restrains collateral Warranties tho’ it had been often attempted in Sir E. Coke’s Time as he says 1. Inst. 373. And since his Time a Statute has been [198] made 4 & 5 Ann. 16. that restrains some collateral Warranties but it is not in Force hei-e or if it was does not reach this Case as I shall shew presently. Sir E. Cokes Opinion is expressly in Point 1. Inst. 374. b. that the Warranty of Ten’t in Tail will bar those in Reversion or Rem’r notwithstanding the Stat. Weston. 2. and is indeed a known & settled Point of Law Mo. 96.
Nor is there one Authority ag’t it but an Argument in Vaugh. 365. Bole a Horton In which Case the Court was divided & no Judgm’t given Nor do I know of any Case since that favours that Opinion But the Distinction of lineal & collateral Warranties w’ch Vaugh. would explode is still kept up as appears from the sd. Stat. 4 & 5. Ann. which as I sayed restrains some collateral Warranties viz of a Tenant for Life & those who have not Estate of Inheritance in Possession The Words are these
Now this Statute if in Force here would not reach our Case because Mountjoy who made the Warranty had an Estate of Inheritance in Possion viz. an Estate tail And so such a Warranty as this is would bind in England being left as at the Common. Law unrestrained by any Statute Consequently it must bind here And then the Pit. is barred by it to claim any Thing in Reversion Obj. this Warranty will not bar because the Reversion was not divested or put to a Right before or at the Time the Warranty was made 10. Rep. 96. 97. Seymors Case The Lease & Rel. is a Conveiance upon the Statute of Uses And no such Conveiance will make a Discontinuance Only so much passes as the Grantor may lawfully pass And so the Reversion is not touched or displaced 10. Rep. supra. 1. Bui. 162. 3. Leon. 16. 9. Rep. 106. a. b. Consequently the Pit. may lawfully enter And wherever there is a right of Entry no Warranty will bar 2. Lili. Abr. 684. Jacob, verb. Warranty
In the Case of (a) Dudley ag’t Booth in this Court It was adjudged that a Warranty created upon a Lease & Rel. was a Bar But changed their Opinion Apr. 1741 betw. Dudley & Perrin post. 317.
*B213 For the Respondent it was insisted that there being only Land enough to satisfie the 1000 Acres intailed The whole must be taken as intailed And then the Deed of 1717. being to defeat the Estate tail was void by the Act 9th Anna c. 13. which enacts that all Pines &c. Acts & Things [199] whatsoever done towards the cutting off avoiding or defeating any Estate tail shall be to all Intents & Purposes null & void
And of that Opinion was the whole Court except Randolph & Digges Apr. 1739.
But surely this was a most strange Determination And the Case could never be rightly understood by the Court The Act never intended to make the Deeds of Ten’t in Tail absolutely void but only with Respect to docking the Intail If it did no Action of Coven’t could be maintained on such a Deed Yet many such have been brought in this Court Neither could a Warranty with Assets be a Bar as was adj’d between Booth & Dudley The Statute De Donis restrains Ten’t in Tail from aliening as well as this Act of Ass. but no such Construction was ever made How does this answer the Argument that the Reversion passed by the Deed of 1717 Or the Point of the Warranty Never was an Argument so little understood
Mercers 2 Book 48.

 Vide Sir J. Randolph’s Argum’t No. 4.